(57 App. Div. 273.)

PEOPLE ex rel. CITY OF NEW YORK v. WOODRUFF, Lieut. Gov., et al.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. RIPARIAN OWNERS—LANDS UNDER WATER — GRANT BY COMMISSIONERS OF LAND OFFICE—POWER OF BOARD OF DOCKS UNDER CITY CHARTER.

Greater New York Charter, § 86, provides that if a riparian owner apply to the land commissioners for a grant of soil under water, the board of docks shall determine whether it will conflict with the public interests, and report to the commissioners, who shall insert such conditions in the grant, recommended by the board of docks, as will protect the public interests in respect to navigation and commerce. Held to give the city only a qualified control of its water front and the land under water within the city, and hence the absolute power of veto of a grant of such land by the commissioners of the land office does not lie in the city board of docks and ferries.

2. SAME.

Greater New York Charter, § 86, provides that, if a riparian owner apply to the land commissioners for a grant of soil under water, the board of docks shall "determine" whether it will conflict with the public interests, and "report their conclusions" to the commissioners who shall insert such conditions in the grant, recommended by the board of docks, as will protect the public interests in respect to navigation and commerce. Held, that the right given to the board of docks to "determine" whether the issuing of a grant requested will be prejudicial to the city's interest, and to "report their conclusions" to the commissioners, is not a right to determine finally, and their report is merely advisory to the commissioners of the land office.

3. SAME.

Greater New York Charter, § 86, provides that, if a riparian owner apply to the land commissioners for a grant of soil under water, the board of docks shall determine whether it will conflict with the public interests, and report to the commissioners, who shall insert such conditions in the grant, recommended by the board of docks, as will protect the public interests in respect to navigation and commerce. Held, that the board of docks does not possess the power to determine absolutely whether a grant should be made, since the statute does not restrict the rights of commissioners to annex conditions to or issue only such grants as are recommended by the board of docks.

Merwin, J., dissenting.

Certiorari, on the relation of the city of New York, to review a determination of the commissioners of the land office to issue a grant of land to the Astoria Light, Heat & Power Company. Confirmed.

The determination under review was made upon the application of the Astoria Light, Heat & Power Company for a grant of land under water upon

the Long Island shore and within the city of Greater New York. Notice of the application was given to the board of docks and ferries of said city. The board of docks filed a protest against the issuing of the grant. A hearing was had by the commissioners of the land office, which resulted in a determination to issue the grant. To review that determination the city of New York procured the issuance of this writ of certiorari. Thereafter the Astoria Light, Heat & Power Company, upon its motion, was made a party to the proceeding, and has responded. In the protest of the board of docks, it was stated that the board had examined into the application, and determined that the granting of the same would conflict with the rights of the city under the charter, and would be otherwise injurious to the public interests of the said city. Upon the argument the respondents waived the question whether this determination could be reviewed by a writ of certiorari, and asked for a decision upon the merits. This application was made under section 86 of the Greater New York charter. The part pertinent to this case reads as follows: "If application be made to the commissioners of the land office by the riparian proprietor for a grant of the soil or land under water within the city of New York as herein constituted, said commissioners shall give notice thereof to the board of docks of the city, which shall examine into such application, and determine whether the granting of the same will conflict with the rights of the city under this act, or be otherwise injurious to the public interests of the said city, and shall report their conclusions to said commissioners, who shall insert such terms and conditions in the grant recommended by the board of docks as will protect the public interests of the city in respect to navigation and commerce. The validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city."

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

John Whalen, Corp. Counsel (Charles Blandy, of counsel), for relator.

John C. Davies, Atty. Gen., for land commissioners.

Boardman, Platt & Soley (Edward P. Coyne, Albert B. Boardman, and Henry L. Simpson, of counsel), for Astoria Light, Heat & Power Co.

SMITH, J. The contention here made is upon section 86 of the charter of Greater New York. The relator insists that by the provisions of that section the commissioners of the land office have been stripped of their power to grant to a riparian owner in the city of New York adjacent land under water upon the objection of the board of docks of that city that the grant would conflict with the rights of the city under the charter, or be otherwise prejudicial to its interests. This veto power in the board of docks is claimed to be effective without the assignment of any ground for such determination, and howsoever unsubstantial may be ground upon which it actually rests. If this contention be sound, a most material change has been effected by the statute, and the state has devested itself of an important power, which for many years it has exercised, and which has been the source of some revenue to the state. While the power of the state so to legislate is unquestioned, the intent to effect so radical a change, involving such vast commercial interests, should be most clearly indicated. In his argument the counsel for the relator asserts three propositions: First. That in the report of the commissioners who framed the New York charter is indicated a purpose to make the city self-governing, and a special purpose to

grant to the city the control of its entire water front and lands under water wherever situated within the city. Second. That the right given to the board of docks "to determine" whether the issuing of the grant asked for will conflict with the rights of the city under the charter or be otherwise prejudicial to its interests is a right to determine finally, and that their conclusions, reported to the commissioners of the land office, can nowhere be questioned. It is contended that the use of the word "determine" indicates a conclusive determination. Third. That the right to annex conditions to the grant made is given by the statute only to a grant "recommended by the board of docks," and as the right to annex conditions must, in reason, be incidental to any grant made, that this clause interprets the right "to determine" theretofore given in the statute, and indicates that no grant is contemplated except such as is "recommended by the board of docks."

To the first two propositions are found ready answers. A general purpose to make the greater city self-governing, and to give to it the control of its water front and the land under water therein, is undoubted. Such a purpose is explicitly expressed in the report of the commissioners. But the control intended to be given was a qualified control. As expressed in the report of the commissioners, it was a control "so far as is necessary to secure and develop the commerce, foreign and domestic, of the city." That the determination of this question, however, was not given absolutely to the city, is established in the Woodruff Case, 39 App. Div. 123, 56 N. Y. Supp. 681. By the charter, upon the demand of the city for this land under water the land commissioners are required to convey. If the absolute power of veto of a grant to any riparian owner is intended by this provision of the charter, then the city has been given practical dominion over this land. Under the Dongan and Montgomerie charters, land under water adjacent to upland upon the Island of Manhattan had been given in fee to the city of New York. With this legislation in mind, the failure to give to the city this land in fee would seem to indicate an intention on the part of the state to retain the dominion over the same, granting to the city only such interest in or control thereof as might be necessary for the promotion of its commerce, foreign and domestic. The right to determine, as given by the charter, is not to determine whether the grant shall issue, but to determine whether the issue of the grant will conflict with the rights of the city, or be otherwise prejudicial to its interests; and this right of determination must be construed in connection with their subsequent duty to report to the commissioners of the land office not their "determination," not their "conclusion," but their "conclusions." This distinction would be hypercritical were it not for the fact that this charter was framed by able lawyers, and in legal procedure "to report their conclusions" has an accepted significance. A referee directed to report his conclusions should report his conclusions of fact and law, which would show not only the result reached, but the grounds which led to the result. Such a report is always advisory, and not conclusive. The requirement, then, that the board of docks should report to the commissioners of

the land office "their conclusions" would seem to give character to the "determination" to be made, as one advisory simply to the commissioners of the land office, and not in any way conclusive.

To the third proposition submitted by the relator the answer is not so apparent. It is difficult to understand why the statute should thus qualify the grant to which conditions should be annexed. There is found in the statute, however, no express provision making the determination of the board of docks conclusive upon the commissioners of the land office. There is no express provision restraining the commissioners of the land office from issuing any grant not recommended by the board. There is no express provision prohibiting the commissioners from annexing the conditions to a grant not recommended. The absolute power of determination contended for in the board of docks is at the most an inferred power. To determine whether such inference is necessary or legitimate, we must examine not only the words of the statute in which the power is claimed to be implied, but also the nature of the power claimed to be granted, the nature of the powers already held by the body to which it is claimed the grant is made, and any other provisions of the statute, or any other circumstances under which the statute was passed which might give aid to the court in ascertaining what was the real intent of the legislature in this enactment. In the first place, this right of determination claimed to be given to the board of docks is in part a right of judicial determination. Their veto may be placed upon the ground that the grant sought will conflict with the rights of the city under the charter. This is a judicial question. The board of docks is presumptively composed of business men. The relator is driven to the position that this judicial question is to be determined by this nonjudicial body, and determined finally. Clearly, the legislature cannot be presumed so to have intended. Again, no provision is made for any hearing before the board of docks. In the case at bar, no hearing was given. Their determination was wholly ex parte. The petition even of the riparian owner was not before them. The law only requires that the board of docks be notified of such an application, upon which notification they are to make their own examination and determination. And yet relator contends that the right of veto of this application is given to a board before which the petitioner has had no opportunity to appear, and which board had not before it even the petition itself. True, the petitioner has no legal right to this grant. The right to petition therefor, however, is given to him, and has been his for many years. In the case at bar the grant sought for is of great value to the petitioner. The court will be slow to deny to the petitioner long-vested rights, if only perchance the right of petition, except by clear mandate of law.

Not only is the nature of the power claimed by the relator one which should be unmistakably given, but it is claimed to be given to a board with interests antagonistic to the interests of the petitioner. The board is the agent of the city for the purchase of dock property for the city's ownership. It has the supervision and control of many piers owned by the city itself. These piers are leased

by the board, producing much revenue to the city. The greater the
demand for these piers, the greater is the revenue received. It is
thus manifestly for the interest of the city financially to limit the
number of docks and of the grants upon which private docks are to
be built. It is fair to assume, however, that this financial interest
of the city is not the interest which the board of docks is to protect
in making their determination. Notwithstanding the presumption
of good faith which the law accords to the acts of all public officers,
the nature of the powers already possessed by the board to which
the new power is claimed to be granted, the antagonism between the
powers already possessed, and the powers claimed to be granted, are
important facts to consider in construing a statute in which the pow-
er claimed is not clearly given. The purpose of this statute is to be
gleaned from the whole statute, and not from a single phrase.
This provision of the statute, in which is found the strongest argu-
ment for the existence of the power claimed by the relator, furnishes
perhaps the strongest argument for its nonexistence. The condi-
tions which shall be annexed to the grant recommended by the board
of docks are to be determined by the commissioners of the land
office. The board of docks may suggest conditions, but of their pro-
priety the commissioners of the land office are to judge. This has
been ruled by this court in People v. Woodruff, 39 App. Div. 123,
56 N. Y. Supp. 681, which ruling has been approved by the court of
appeals in affirming the decision, as reported in 159 N. Y. 536, 53
N. E. 1129. To hold, as contended by the relator, that the power to
issue was confined to one recommended by the board of docks, would
indirectly nullify the power given to the commissioners of the land
office to annex proper conditions to a grant given, as the board of
docks would then refuse to recommend a grant unless conditions
named should be annexed. It is an accepted principle of statutory
interpretation that a statute should not be so interpreted as to ren-
der ineffective any part thereof. See Black, Interp. Laws, 106.
Again, if the determination of what conditions should be annexed
to a grant rests ultimately with the land board, as has been ruled,
why not the determination whether the grant itself should issue?
Both determinations involve the decision of the same questions, to
wit, the effect upon the public interests of the city. The commis-
sioners of the land office are as competent to make the determination
in the one case as in the other. No reason is apparent why the de-
termination of the one should be given to the board of docks and of
the other to the commissioners of the land office. "The mind of the
legislature is presumed to be consistent." Id. 98.

Finally, some aid to the interpretation of this statute may be
gleaned from the presumption of law that a grant by the state is
of strict construction. The state will not be presumed to have
granted to the city a prerogative held in trust not only for the city,
but for the whole state, whose commerce enters largely through the
port of New York. This relator stands protesting without assign-
ing any ground for its stand, and without a reason suggested, ex-
cept the possible desire of the city in the future to purchase this
land. Their desire is that the land shall remain unimproved, so that,

if they shall desire at any time to purchase, they may do so at a less expense. This ground furnishes no justification, legal or moral, for denying the petitioner's application. The position assumed is prejudicial to the commercial interests of the city and of the state, which demand large dock facilities, and it matters not by whom the docks may be owned. Nor can the grant of this land to the riparian owners be prejudicial to the city except as an owner of other dock property which it desires to lease. There is still reserved the unquestioned power of the city to regulate the manner of the building of the docks by riparian owners so that no harm can result from the nature of the improvements which shall be made. The city has at any time the undoubted right to take title from the riparian owner before or after improvements are made upon making compensation. The rights of the city are thus fully protected by other provisions in the charter. On the other hand, the construction contended for by the respondents is in the interest of commerce, both city and state. It appeared upon the argument that about 100 miles of coast existed in New York City where the adjacent land under water was still owned by the state. Common experience will testify that the building up and improving of this land will progress more rapidly in the hands of private owners than in the hands of the city, and that such improvement in dock building will be a material aid to commerce.

For these reasons we conclude that the legislature of the state did not intend to renounce to the board of docks of the city the power to determine absolutely whether its own representatives, the commissioners of the land office, should grant its own land. The determination of the commissioners of the land office should, therefore, be confirmed.

Determination of the commissioners of the land office confirmed, with $50 costs and disbursements; order to be settled by SMITH, J. All concur, except MERWIN, J., dissenting.